# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13 C 459 |
| SEALTITE ROOFING & CONSTRUCTION COMPANY and ERIE INSURANCE EXCHANGE a/s/o RICHARD RYSER, | ) Judge John J. Tharp, Jr. ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Atlantic Casualty Insurance Company ("Atlantic") brings this action against its insured, Defendant Sealtite Roofing & Construction Company ("Sealtite"), seeking a declaratory judgment that it has no duty to defend or indemnify Sealtite from claims asserted in an underlying lawsuit filed in the Circuit Court of Cook County, Illinois. The underlying lawsuit, *Erie Insurance Exchange as subrogee of Richard Ryser v. Sealtite Roofing & Construction Company*, Case No. 2011 L 012497, contends that Sealtite is liable for damage allegedly caused by the failure of a roof it installed. Atlantic, as Sealtite's insurer, is defending the underlying case under a reservation of rights.[1] Atlantic claims that the damages claimed in the underlying lawsuit fall within several policy exclusions, and it therefore has no duty to defend or indemnify Sealtite against those claims. Pending before the Court is Sealtite's Motion to Dismiss for Failure to State

---

[1] Sealtite disputes that Atlantic took the proper steps to reserve its rights, but on a motion to dismiss the facts alleged in the complaint are taken as true. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

a Claim (Dkt. 33) and Sealtite's Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss (Dkt. 47).

## BACKGROUND[2]

In 2005, Sealtite contracted to perform roofing work on a building in Orland Park, Illinois, owned by Richard Ryser. Underlying Compl., Dkt. 1-1, at 1. Specifically, Sealtite "was hired to replace the roof framing" on Ryser's building. *Id.* In February 2011, "the roof framing" blew off the structure, and the property was damaged by "snow, rain, and other moisture." *Id.* at 2. Ryser, the property owner, filed a claim under his own insurance policy with Erie Insurance Group ("Erie"), which paid $740,010.17 for the property damage under the policy. *Id.* at 3. Erie, as Ryser's subrogee, then sued Sealtite in the Circuit Court of Cook County seeking to recover this amount under two theories of liability—negligence and breach of contract. *Id.* at 1, 3.

At the time the underlying lawsuit was filed, Sealtite had an insurance policy (the "Policy") with Atlantic. The Policy's coverage terms provides in relevant part:

> SECTION I - COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have

---

[2] On a motion to dismiss, factual allegations in the complaint are accepted as true, and allegations that take the form of legal conclusions are not. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For this type of insurer declaratory action, under Illinois law, the duty to defend arises from the facts alleged within the underlying complaint—even if the allegations are groundless, false, or fraudulent. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73, 578 N.E.2d 926, 930 (1991). Therefore, on this motion, the factual allegations in both the declaratory complaint and the underlying complaint are taken as true.

the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

Insurance Agreement, Dkt. 1-2B, at 1.

The Policy also provides for several exceptions to coverage. The exclusion relevant to this case is the Roofing Limitation Endorsement ("Roofing Exclusion"),[3] which provides:

We do not cover claims, loss, costs or expense arising out of "bodily injury", "personal injury" or "property damage" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

Insurance Endorsements, Dkt. 1-2C, at 2.

---

[3] Atlantic refers to a number of other exclusions in its brief, and alleged generally in its complaint that "even if the Roofing Exclusion did not preclude any duty to defend and indemnify, there are other exclusions, quoted above, . . . which would preclude any potential coverage under the ATLANTIC policy for the Lawsuit," Compl., Dkt. 1, at 9, but it does not develop any argument concerning any exclusion other than the Roofing Exclusion. Accordingly, it has forfeited any argument concerning the applicability of other exclusions to the question of whether it has a duty to defend. *See, e.g.*, *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

Further, the Policy states, "Where there is no coverage under this policy, there is no duty to defend any insured. . . . Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us." *Id.* at 8.

Atlantic, as Sealtite's insurer, tendered a defense of the underlying suit under a reservation of rights. Atlantic then filed this action, alleging that it is entitled to a declaratory judgment that it has no duty to indemnify or to defend Sealtite in the lawsuit arising from that roof installation. Sealtite has now moved to dismiss the duty to defend claim, arguing that the underlying lawsuit alleges theories of liability that would be covered under the Policy, and to dismiss the duty to indemnify claim, arguing that the claim is premature before the resolution of the factual issues in the underlying lawsuit.

## DISCUSSION

The parties agree that the principal issue in this declaratory judgment action is whether the Roofing Exclusion applies. Atlantic maintains that this exclusion applies in this case because Sealtite installed "a hot torch applied membrane roofing system"; damages arising from operations involving the installation of such a system are, it maintains, excluded from the Policy's coverage.

Under Illinois law, an insurer's duty to defend an insured turns primarily on the allegations of the underlying complaint. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991). If the underlying complaint alleges facts even potentially within policy coverage, the insurer is obliged to defend its insured. *Id.* When the underlying complaint alleges several theories of recovery, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Id.* In addition, if an insurer has a duty to defend the insured in one count of a lawsuit, it has a duty to defend that insured in all

4

counts of that lawsuit. *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 453, 930 N.E.2d 1011, 1015 n.2 (Ill. 2010); *see also Md. Cas. Co. v. Peppers*, 64 Ill.2d 187, 194, 355 N.E.2d 24, 28 (Ill. 1976). In other words, if the insurer wishes to avoid the duty to defend, the insurer must show that the underlying lawsuit has no potential to lead to liability covered under the policy. *See Pekin Ins. Co.*, 237 Ill. 2d at 455, 930 N.E.2d at 1017.

The underlying complaint, however, does not include any allegations that Sealtite installed a hot torch applied membrane roofing system (or any other system involving any of the application methods described in the exclusion). To the contrary, Exhibit A of the underlying complaint, the "Scope of Work" for the job, calls for installation of a "modified bitumen roof membrane," and does not refer to any process involving heat application. *See* Scope of Work, Dkt. 1-1A, at ¶ 5. Sealtite therefore maintains that Atlantic cannot proceed with a declaratory judgment action with respect to its duty to defend, because that duty must be determined by reference to the allegations of the underlying complaint, not from extrinsic evidence.

But, under certain circumstances, an insurer may use evidence extrinsic to the facts alleged in the underlying lawsuit to prove facts that would take the underlying lawsuit completely outside of the potential coverage of the insurance policy. *See Pekin Ins. Co.*, 237 Ill. 2d at 460–62, 930 N.E.2d at 1020–21. The plaintiff in a declaratory judgment action, when seeking to avoid a duty to defend or to indemnify, may rely on extrinsic evidence unless the evidence "tends to determine an issue crucial to the determination of the underlying lawsuit." *Fid. & Cas. Co. of N.Y. v. Envirodyne Eng'rs* ("*Envirodyne*"), 122 Ill. App. 3d 301, 304–05, 461 N.E.2d 471, 474 (Ill. App. Ct. 1983) (quoted by *Pekin Ins. Co.*, 237 Ill. 2d at 461, 930 N.E.2d at 1020). Further, the policy itself expressly allows Atlantic to make a "determination regarding a defense obligation . . . on evidence or information extrinsic to any complaint or pleading

presented to us." Insurance Endorsements, Dkt. 1-2C, at 8. Atlantic therefore maintains that it is entitled to pursue a declaratory judgment action regarding its duty to defend, even if based on extrinsic evidence.

Sealtite correctly argues that Atlantic may not seek a determination in the declaratory judgment action of an issue that is material to resolution of the underlying lawsuit. *See Md. Cas. Co.*, 64 Ill. 2d at 196–97, 355 N.E.2d at 29–30 (holding that the trial court in a declaratory judgment action abuses its discretion when it determines any of the "ultimate facts upon which recovery is predicated" in the underlying case). But here, the question of whether Sealtite installed a hot torch roof system is not material to resolution of the claims in the underlying case. The underlying complaint alleges that Sealtite failed to take several measures that would have prevented the roof failure—specifically, that Sealtite:

> a. Failed to attach the 2 x 12 ridge board of said roof to the deck;
>
> b. Failed to have the nails used to attach the rafters to the roof penetrate beyond the roof decking plywood;
>
> c. Allowed the member of the rafters to be ripped down to a dimension almost as small as 1.5 inches at the roof edge;
>
> d. Failed to make sure that the roof installed on said premises complied with proper design and construction requirements;
>
> e. Failed to make sure that the additional roof framing was properly anchored to the roof.
>
> f. Failed to have a licensed structural engineer or architect design and supervise the construction of said roof;
>
> g. Failed to use end bolt detail or nail detail with proper uplift resistance.

Underlying Complaint, Dkt. 1-1, at 2, 4.

The gist of these allegations is that Sealtite's work involved replacement of roof framing, and the allegations of Sealtite's failures are consistent with that general categorization. The parties appear to agree that none of these alleged acts or omissions relate to any of the roofing methods listed in the Roofing Exclusion. Sealtite acknowledges that "[n]one of these allegations bear any connection to the alleged use of a hot torch applied membrane roofing system." Def.'s Mem., Dkt. 34, at 9. Similarly, Atlantic maintains that these allegations in the underlying complaint are "entirely different issues" from its own allegations in the declaratory complaint. Pl.'s Resp., Dkt. 42-1, at 5. Thus, there is no impediment to resolving the question of whether Sealtite installed a hot torch membrane roof system, as the answer to that question is not material to whether Sealtite is liable in the underlying litigation. Atlantic is therefore entitled to present extrinsic evidence to establish this fact.[4] *See, e.g.*, *Pekin Ins. Co.*, 237 Ill. 2d at 467, 930 N.E.2d

---

[4] Citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Sealtite maintains that Atlantic's declaratory complaint fails to allege "supporting evidence" for its allegations extrinsic to the underlying complaint. *Iqbal* imposes no requirement to allege supporting evidence, however; it requires only the allegations of facts sufficient to allow a court to draw a reasonable inference" that the plaintiff's position should prevail. *Id.* at 678. The plausibility standard of *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), does not call for the pleading of evidence; it "simply calls for enough fact to raise a reasonable expectation that discovery will *reveal evidence*" supporting the claim in the complaint. *Twombly*, 550 U.S. at 556 (emphasis added).

Sealtite also argues that pleading "supporting evidence" is a requirement of Illinois law, but where there is a conflict between federal and state pleading standards with respect to state law claims, the federal standard applies. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Servs., Inc.*, 536 F.3d 663, 671–72 (7th Cir. 2008).

Moreover, neither of the cases Sealtite cites for this proposition of Illinois law actually establishes it. *Envirodyne*, a case decided on summary judgment, does not hold that a declaratory judgment action that relies on allegations extrinsic to the underlying complaint to establish the applicability of a policy exclusion cannot survive a motion to dismiss if the plaintiff has not adduced "supporting evidence"; to the contrary, it expressly rejected the "contention that the trial court may look only to the complaint in the underlying lawsuit when determining, in a separate declaratory judgment action, whether an insurer owes a duty to its insured to defend the insured in the underlying action." *Envirodyne*, 122 Ill. App. 3d at 303, 461 N.E.2d at 473. Contrary to Sealtite's representation of *Envirodyne*, that court's reference to "evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding" was a statement that the insurer must be allowed the opportunity—the "prerogative" to present such

at 1023 (considering extrinsic evidence to determine whether any *potential* for insurance coverage existed, but avoiding any resolution of *actual* underlying liability); *Envirodyne*, 122 Ill. App. 3d at 307–08, 461 N.E.2d at 476 (holding that determination that work was performed as a "consulting engineer" did not affect underlying determination of negligence and so could be established through extrinsic evidence); *Millers Mut. Ins. Ass'n of Ill. v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 892, 552 N.E.2d 254, 256–57 (Ill. App. Ct. 1989) (permitting consideration of extrinsic evidence regarding application of exclusion for "completed operations hazards" where insured would be liable whether the operation was "completed" or not at the time of the injury).

Determining whether the roof at issue included a heat-applied membrane does not, however, resolve the issue of whether the Roofing Exclusion applies to relieve Atlantic of its duty to defend. Sealtite argues that even if the roof at issue was a heat-applied system, the Roofing Exclusion would not apply because Atlantic does not "allege that that the underlying damage was *caused by* the use of a hot torch applied membrane roofing system." Def.'s Mem., Dkt. 34, at 8. Sealtite maintains that Illinois law requires a causal connection between the conduct targeted in an insurance policy exclusion and the loss claimed; if the loss would have occurred even had the insured's conduct been subject to the exclusion, then the exclusion does not apply. Sealtite contends that Atlantic (i) has not asserted that any operations associated with

---

evidence in the same way that any other party seeking summary judgment in a declaratory proceeding. *Id.* at 305, 461 N.E.2d at 474. That means, plainly, that the party should be given the same opportunity for discovery that any other party would have. *General Insurance,* the second case on which Sealtite relies, itself relied on *Envirodyne*. And while it is true that the *General Insurance* court entered judgment on the pleadings against an insurer who had failed to present "supporting evidence" beyond its own declaratory complaint, that case is distinguishable from this one. The insurer in *General Insurance* had failed to plead factual allegations in its complaint, but relied only on a bare legal conclusion that a policy exclusion applied. *See Gen. Ins. Co. of Am. v. Clark Mall, Corp.*, 631 F. Supp. 2d 968, 978 (N.D. Ill. 2009) (Cole, Mag. J.) ("[W]hile a court must accept allegations as true in this context, it need not accept legal conclusions.") (internal citations omitted). In contrast, Atlantic has properly alleged specific facts in its declaratory complaint that would support its conclusion that the Roofing Exclusion applies.

the installation of a hot torch applied roofing system caused any of the damages that Ryser experienced; and (ii) cannot do so because the allegations in the underlying complaint involve only questions about the sufficiency of the roof framing and have nothing to do with the application of a hot torch applied roofing membrane. For the roofing exclusion to apply, Sealtite contends that "this Court would necessarily need to determine whether the property damage at issue occurred *as a result* of the installation process that Sealtite used." Def.'s Reply, Dkt. 45, at 5.

Although there is some reason to question whether Illinois law imposes a causal connection requirement between a policy exclusion and the insured's loss,[5] it is not necessary to resolve the question of whether there is a causal connection requirement under Illinois law, because there is a causal requirement in the Roofing Exclusion itself:

> We do not cover claims, loss, costs or expense arising out of "bodily injury", "personal injury" or "property damage" *as a result of* any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on

---

[5] The federal district court case Sealtite relies on for this proposition, *American States Insurance Co. v. Byerly Aviation, Inc.*, 456 F. Supp. 967 (S.D. Ill. 1978), has never been cited by an Illinois court; the Illinois Supreme Court does not appear to have addressed the question; and the clear majority rule among states is that there is no such requirement. *See, e.g.*, *Old Republic Ins. Co. v. Griffin*, 402 F.3d 876, 880 (9th Cir. 2005) (collecting cases in the aviation insurance context). Further, the imposition of such a requirement could be inconsistent with the rule that extrinsic evidence relevant to applicability of a policy exclusion may be sought so long as it does not tend "to determine an issue crucial to the determination of the underlying lawsuit." *Envirodyne*, 122 Ill. App. 3d at 304, 461 N.E.2d at 474. In *Envirodyne*, for example, the extrinsic evidence at issue went to whether an exclusion for property damage arising out of the provision of professional engineering services applied. That issue was fair game in the declaratory action, the appellate court held, because it did not dispose of the negligence question in the underlying litigation. Allowing extrinsic evidence of the nature of the services rendered would be inconsistent with a causal connection requirement, however; had it been causally connected, the extrinsic evidence would not have been permissible since it would have tended to determine a material issue in the underlying litigation. In other words, there is at a minimum some tension between the well-established "ultimate issue" rule of *Pekin* and *Envirodyne* and the "causal connection" rule proposed by Sealtite.

> material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

Insurance Endorsements, Dkt. 1-2C, at 2 (emphasis added). Boiled down to its essence, the Roofing Exclusion states: "We do not cover claims for property damage as a result of operations involving any roofing system requiring heat for application." Plainly, the exclusion applies only when the insurer can demonstrate a causal link between the broadly defined "operations" and the "property damage" giving rise to a "claim"; the damage must occur "as a result of" the operations described.

But there's the rub: what "operations" does the exclusion encompass? Sealtite maintains that the exclusion carves out only damages caused by "the installation process," Def.'s Reply, Dkt. 45, at 5, but the Roofing Exclusion excludes damages caused by "any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any [roofing methods involving heat application]." *Id*. The policy is unambiguous on this term—"any" operations merely "involving" the excluded roofing methods would count as an excluded "operations"—and where the meaning of terms in an insurance policy are unambiguous, courts must follow the plain, ordinary meaning. *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 238 Ill. 2d 177, 185, 939 N.E.2d 288, 293 (Ill. 2010). Further, the examples of "initial inspection" and "pre-installation work" confirm that the definition of "operations" is broad enough to cover more than just the installation operations, which is the limitation that Sealtite reads into the exclusion. Extending the exclusion to bar claims premised on "any" operations necessarily extends the exclusion to encompass damages attributable to "any" operation, ongoing or completed, that involved a roofing system that included a membrane applied with heat. That would include not just damage that might have occurred in the course of, or by virtue of, the installation of a heat-applied membrane, but damage resulting from "any

operation" associated with the roofing system. As such, it is clearly broad enough to encompass the framing problems alleged in the underlying complaint (assuming that the roof that Sealtite installed did, in fact, include a membrane applied with heat).[6]

Given the breadth of the language of the Roofing Exclusion, then, causal connection follows based on the nature of the roofing system installed, not on how it was installed. If Sealtite installed a the type of system described by the exclusion—a membrane roofing system requiring heat for application—any property damage resulting from the provision of that roofing system is excluded from coverage. It remains for Atlantic to prove that the exclusion applies— that is, that Sealtite provided a heat-applied membrane roofing system—but the presence of a fact dispute that bears on application of the exclusion means that the Court must deny Sealtite's motion to dismiss Atlantic's declaratory claim regarding duty to defend.

For this reason, the Court must also conclude that Atlantic's claim regarding the duty to indemnify is not premature. It is true that decisions about an insurer's duty to indemnity generally must follow a determination of the insured's underlying liability, *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991), but this case presents an exception to the general rule. As discussed above, Atlantic can only prevail on its claim that it has no duty to defend if it proves that there is no *potential* for the duty to indemnify

---

[6] To be clear, this does not mean that the Court is resolving any issue in the underlying litigation as to whether Sealtite properly framed or otherwise constructed the roof. Having determined that extrinsic evidence is permitted to show whether the roof at issue included a heat-applied membrane because that is not a question material to resolution of the underlying litigation, the question then becomes whether the Roofing Exclusion would exclude the type of damage claim asserted in the underlying litigation. The Court's determination that it would does not resolve the merits of the underlying dispute. As Atlantic notes in its brief, its assertion is "that the damages arose out of this type of roofing system, which is a different issue from that in the underlying lawsuit, *i.e.*, the determination of how the roofing system was performed, not whether it was done negligently or not, or was the proper system or not." Pl.'s Resp., Dkt. 42-1, at 3.

to arise from the underlying lawsuit. *See Pekin Ins. Co.*, 237 Ill. 2d at 455, 930 N.E.2d at 1017. If Atlantic prevails in meeting this standard, it will have definitively established that it has no duty to indemnify, either—even if the underlying liability of the insured remains unresolved. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398, 620 N.E.2d 1073, 1081 (Ill. 1993) ("In cases . . . where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage."). Therefore, Atlantic's claim regarding the duty to indemnify is not premature, because the issues overlap entirely with the issues relating to the duty to defend. Concomitantly, it means that discovery with respect to both claims should go forward.

*   *   *

For the reasons set forth above, Sealtite's Motion to Dismiss (Dkt. 33) is denied. Sealtite's Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss (Dkt. 47) is denied as moot.

Dated: November 14, 2014

John J. Tharp
United States District Judge